# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **WALGREEN CO.**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| **NVIP, LLC and HALL GLOBAL, LLC,** | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

Walgreen Co. ("Walgreens"), by and through its undersigned counsel, hereby files this Complaint against NVIP, LLC ("NVIP") and Hall Global, LLC ("Hall Global") (collectively, "Defendants") alleging as follows:

## INTRODUCTION

1. This is an action for fraudulent transfer based upon numerous monetary transfers made by Aktive Health, LLC ("Debtor") to Defendants in order to avoid paying amounts owed to Walgreens. At the time Debtor made each transfer, Walgreens held a valid and outstanding claim (as the term is defined by Tex. Bus. & Com. Code Ann. §24.002(3)) against Debtor, of which has been reduced to a court ordered judgment against Debtor. Defendants, at all times, were wholly owned, controlled, and managed by the same board of managers as Debtor and had actual

1

knowledge of Walgreens' claim and judgment against Debtor as well as Walgreens' demands for payment. In spite of this, Defendants accepted millions of dollars siphoned out of Debtor's bank account and into Defendants' accounts, rendering Debtor completely insolvent and unable to pay any amounts owed to Walgreens. The money transferred to Defendants was generally transferred in large, round numbers as opposed to payment for any particular invoice. Upon information and belief, the transfers were unsupported by any prior debt or other consideration.

2.  As a direct and proximate result of Debtor's fraudulent transfers to Defendants, Walgreens has suffered damages of not less than $9,893,671.20.

## **PARTIES**

3.  Walgreens is an Illinois corporation with its principal place of business at 200 Wilmot Road, Deerfield, Illinois, 60015. Walgreens is in the business of providing consumer goods and services, as well as pharmacy, health, and wellness services, through thousands of retail drugstores throughout the United States.

4.  NVIP is a limited liability company organized under the laws of the state of Nevada and doing business in Texas and may be served with the summons and Complaint through its registered agent William W. Meier, III, 1445 Ross Avenue, Suite 2400, Dallas, TX 75202. NVIP, through its members, is a citizen of Arizona, California, Florida, Georgia, Kentucky, Michigan, Texas, and New Zealand. None

of NVIP's members are citizens of Illinois, and thus, NVIP is not a citizen of Illinois. The members of NVIP are:

 (i) Agency Entourage, LLC, a limited liability company organized under the laws of Texas. Its members are Ben Randolph and Candace Randolph who are both citizens of Texas;

 (ii) Mike and Cathy Anderson, citizens of Texas;

 (iii) Mikel Anderson, a citizen of Texas;

 (iv) B&B Global Enterprises LLC, a now terminated limited liability company which was formerly organized under the laws of California. B&B Global Enterprises LLC had two members:

  a. MEB Music Publishing LLC, a limited liability company organized under the laws of California. Its members are Matthew Blitzer and Lynda Blitzer, citizens of California; and

  b. WKRA Holdings LLC, a now terminated limited liability company which was formerly organized under the laws of California. Its sole member was Gregg Bigger, a citizen of California;

 (v) Steven Berkey, a citizen of Texas;

3

(vi)    Briarpath Properties, LLC, a limited liability company organized under the laws of Texas. Its sole member is John R. Heilman, a citizen of Texas;

(vii)   Grant and Abby Bryant, citizens of Texas;

(viii)  Jay and Cynthia Desai Living Trust. Jay Desai and Cynthia Desai are the trustees and are both citizens of Texas;

(ix)    Susan Barbara Doherty Living Trust. Susan Barbara Doherty and Julia Christine Jackman are the trustees and are both citizens of Michigan;

(x)     Anthony Gaines, a citizen of Arizona;

(xi)    Alister Gates, a citizen of New Zealand;

(xii)   Jeffrey Guest, a citizen of Kentucky;

(xiii)  Dr. Thomas Hansen, a citizen of Texas;

(xiv)   Daniel Hopkin, a citizen of Texas;

(xv)    Juwan Howard, a citizen of Florida;

(xvi)   Infineon Investments, LLC, a limited liability company organized under the laws of Texas. Its members are Marla Elliott and Kevin Elliott, both citizens of Texas;

(xvii) K4 Devices LLC, a limited liability company organized under the laws of Texas. Its sole member is Ronica Holcombe, a citizen of Texas;

(xviii) Glenn and Maureen Koepp, citizens of Georgia;

(xix) Zachery Kuykendall, a citizen of Texas;

(xx) Dr. John McGarry, a citizen of Texas;

(xxi) Misar Investments, LLC, a limited liability company organized under the laws of Michigan. Its sole member is Lauren Hinton, a citizen of Florida;

(xxii) Dr. Reza Mobarak, a citizen of Texas;

(xxiii) Montefalco LLC, a now terminated limited liability company which was formerly organized under the laws of Texas. Its sole member was Scott H. Gibson, a citizen of Texas;

(xxiv) Gary and Mary Diane Moody, citizens of Texas;

(xxv) William Nicholson, a citizen of Texas;

(xxvi) Dr. Arash Payrovan, a citizen of Texas;

(xxvii) James Pendergrass, a citizen of Texas;

(xxviii) Andrew Rosen, a citizen of Texas;

(xxix) Scion Health Partners LLC, a limited liability company organized under the laws of Delaware. It has two members:

    a. Scion Partners, LLC, a limited liability company organized under the laws of Delaware. Its sole member is Richard Berritt, a citizen of Georgia;

    b. KSKZ Management, LLC, a limited liability company organized under the laws of Texas. Its members are Kevin Kuykendall and Sabrina Burmester Kuykendall, both citizens of Texas;

(xxx) Shaikh Family Holdings LLC, a limited liability company organized under the laws of Delaware. Its members are Mohammed Shaikh, Nazia Shaikh, Aila Shaikh, and Kinza Iman Shaikh, all of whom are citizens of Texas;

(xxxi) Anjali Singh, a citizen of Texas;

(xxxii) Ben Vandentoorn, a citizen of Texas;

(xxxiii) WHSH, LLC, a limited liability company organized under the laws of Texas. Its sole member is Kyle Kuykendall, a citizen of Michigan; and

(xxxiv) Wolbers Family Trust.  Richard and Jennifer Wolbers are the trustees and are citizens of Michigan.

5. NVIP is and was, at all times material, the sole member of and owned, operated, and controlled Debtor.

6. Hall Global is a limited liability company organized under the laws of the state of Texas and may be served with the summons and Complaint through its registered agent William W. Meier, III, 1445 Ross Avenue, Suite 2400, Dallas, TX 75202.  Hall Global's sole member is NVIP, and is therefore deemed a citizen of Arizona, California, Florida, Georgia, Kentucky, Michigan, Texas, and New Zealand as set forth above.  None of Hall Global's members are citizens of Illinois, and thus Hall Global is not a citizen of Illinois.

7. Hall Global is and was, at all times material, wholly owned, operated, and controlled by the same entity as Debtor – NVIP.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Walgreens and Defendants, and the amount in controversy, exclusive of interests, costs, and attorneys' fees, exceeds $75,000.

9. Venue is proper in this District under 28 U.S.C. §1391(b)(1) because Hall Global resides within the Northern District of Texas and NVIP's principal place of business is within the Northern District of Texas.

## FACTUAL ALLEGATIONS

A. **Background of Underlying Dispute.**

10. On July 13, 2020, Walgreens and Debtor entered into a General Trade and Electronic Data Interchange Agreement ("GTA") for the purchase of Aktive Wipes, merchandise that Debtor represented to Walgreens had been registered with the United States Environmental Protection Agency ("EPA") and was thus authorized to be legally distributed and sold throughout the United States.

11. The GTA provided in Section C, 2 that Walgreens "shall have the unrestricted right to rescind its purchase of the merchandise from [Debtor] both before and after acceptance of such merchandise by Walgreen[s] and return any remaining merchandise to [Debtor] for full refund of any amounts paid for such merchandise."

12. Section C, 6(b) of the GTA provided a representation by Debtor that all Debtor's merchandise was and is "in compliance with all Federal, State and Local statutes, regulations and ordinances."

13. Throughout the third quarter of 2020, Walgreens purchased approximately 4.2 million units of Aktive Wipes paying Debtor approximately $10,000,000 over the course of 105 purchase orders.

14. On or about December 13, 2020, the EPA began investigating Debtor's sale of Aktive Wipes and sent Debtor a Notice of Potential Violation and Opportunity to Confer letter (the "Notice") regarding the Aktive Wipes.

15. Because Debtor sold Walgreens the Aktive Wipes knowing such wipes were not authorized for distribution and sale by the EPA, upon notice of the EPA's investigation, Debtor knew it would ultimately be required to issue Walgreens a refund for the wipes purchased.

16. On or about January 14, 2021, Walgreens notified Debtor of issues with the Aktive Wipes, specifically that the merchandise had been flagged by the EPA as unregistered, and on January 19, 2021, advised Debtor that Walgreens would have to put a stop sale on Aktive Wipes sold in its North Carolina stores. Walgreens attempted to enforce the terms of the GTA by requiring Debtor to accept return of and refund Walgreens for such merchandise. Debtor refused.

17. Thus, no later than January 2021, Debtor, NVIP (as Debtor's sole member), and Hall Global (through its sole owner and operator, NVIP) knew that Walgreens was disputing its purchase of Aktive Wipes under the GTA and would be seeking a full refund of all amounts paid for the merchandise.

**B.     Walgreens Obtains Judgment Against Debtor.**

18.    On April 4, 2022, Walgreens filed a complaint against Debtor in the United States District Court for the Northern District of Illinois for breach of the GTA.

19.    On June 13, 2023, the court entered default judgment against Debtor in the amount of $9,883,770.08, plus prejudgment interest of $9,901.12 (the "Judgment").

20.    The Judgment presently remains unsatisfied and outstanding.

**C.     Debtor and Defendants Engage in Fraudulent Transfers.**

21.    In attempting to enforce the Judgment, Walgreens has conducted post-judgment discovery, pursuant to Federal Rules of Civil Procedure 45 and 69.

22.    During post-judgment discovery, Walgreens discovered that from the date Debtor and Defendants were first on notice of Walgreens' claim, Debtor fraudulently transferred (a) approximately $1,205,195.36 to Hall Global in twenty-one (21) separate bank transfers and (b) approximately $1,721,000 to NVIP in twenty (20) separate bank transfers without adequate consideration and in an attempt to hinder, delay, and defraud Walgreens.  Each amount transferred from Debtor to Defendants during this period is summarized on **Exhibit 1** attached hereto, incorporated by reference herein, and made part of this pleading (the "Transfers").

23. As evidence of Debtor and Defendants' scheme to hinder, delay, and defraud Walgreens in collecting amounts for which it is entitled under the GTA, each of the Transfers made from Debtor to Defendants reflected the following:

   a. Neither Defendants nor Debtor kept any form of record that detailed the reason for, consideration received in return for, or approval of any of the Transfers.

   b. Neither a board member of NVIP nor the former CEO of Debtor and Defendants (collectively, the "Judgment Debtor Deponents") at the time of the Transfers could explain during depositions why the Transfers were made or what any Transfer represented.

   c. All of the Transfers were made in wholly round numbers, and none represented specific amounts.

   d. The Judgment Debtor Deponents testified that Debtor "ran out of money . . . Q1 '21" and that time was "when financially it was getting in trouble[,]" yet the beginning of 2021 was when Debtor transferred the most money to Defendants.

   e. At the time of the Transfers, Debtor did not have adequate assets to finance the business it had conducted and at all times had an unreasonably small amount of capital in relation to its ongoing business and debt owed. NVIP and Hall Global, given the common

ownership and management, were fully aware of Debtor's insolvency.

f. Debtor was insolvent, as both Judgment Debtor Deponents testified in depositions that when Walgreens issued its demand for repayment, Debtor did not have the money to repay. Furthermore, both Judgment Debtor Deponents testified that at the time of the Transfers, Debtor was generally unable to pay its bills as they became due. NVIP and Hall Global, given the common ownership and management, were fully aware of Debtor's insolvency.

g. Judgment Debtor Deponents both testified that Debtor did not have the money to repay Walgreens upon Walgreens' demand. NVIP and Hall Global, given the common ownership and management, were fully aware of Debtor's inability to pay Walgreens.

h. Debtor and Defendants' former CEO testified that the same managing board and specifically the same person had ultimate authority over Debtor and Defendants' bank accounts. Further, because the same board managed Debtor and Defendants, each entity knew the specific financial condition of the other.

i. Because the same board managed Debtor and Defendants, Debtor never lost control of the money transferred out of Debtor's account

into Defendants' accounts. Upon information and belief, funds were transferred from Hall Global's account back into Debtor's account on an "as needed" basis. Each amount transferred from Hall Global to Debtor during this period is summarized on **Exhibit 2** attached hereto, incorporated by reference herein, and made part of this pleading (the "Returned Funds").

## COUNT I
### Fraudulent Conveyance Pursuant to Tex. Bus. & Com. Code Ann. § 24.005(a)
### Transfers Made with Intent to Hinder, Delay or Defraud

24. Walgreens re-alleges Paragraphs 1-23 as if fully set forth herein.

25. Under Section 24.005(a), a "transfer made . . . is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor[.]" Tex. Bus. & Com. Code Ann. § 24.005(a).

26. Section 24.005(b) provides a list of non-exhaustive factors to be considered in assessing "actual intent": the transfer or obligation was to an insider[1]; the debtor retained possession or control of the property transferred after the transfer; the transfer was concealed; the debtor had been sued or threatened with suit before the transfer was made; the transfer was of substantially all the debtor's assets; the debtor removed or concealed assets; the value of the consideration received by the

---

[1] For purposes of Section 24.005(b), insider is defined at Section 24.002(7).

debtor was reasonably equivalent to the value of the asset transferred; the debtor was insolvent or became insolvent shortly after the transfer was made; and the transfer occurred shortly before or shortly after a substantial debt was incurred.  *See* Tex. Bus. & Com. Code Ann. § 24.005(b).

27. Debtor and Defendants conducted the Transfers as summarized on Exhibit 1 with actual intent to hinder, delay, and defraud Walgreens.

28. Actual intent, as defined by Section 24.005(b), to hinder, delay or defraud Walgreens is evident from the following:

   a. All Transfers were made by Debtor to Defendants, affiliates and insiders.

   b. All Transfers were made without receipt of consideration or with the receipt of only nominal or illusory consideration.

   c. Debtor was insolvent when the Transfers were made or became insolvent shortly after the Transfers were made, as its debts exceeded its assets, and moreover, it was generally unable to pay its debts as they became due.  Defendants were aware that Debtor was insolvent as the same members of the board ultimately controlled both Defendants and Debtor.

   d. Debtor and Defendants were aware of Debtor's substantial debt to Walgreens at the time the Transfers were made.

  e. Debtor maintained control over the funds after they had been transferred to Defendants, as the same members of the board ultimately controlled both Defendants and Debtor.

29. The Transfers violated Tex. Bus. & Com. Code Ann. § 24.005(a).

30. As a direct and proximate result, Walgreens incurred significant damages.

## COUNT II
**Fraudulent Conveyance Pursuant to Tex. Bus. & Com. Code Ann. 24.005(a)(2) Transfers Made Without Reasonably Equivalent Value**

31. Walgreens re-alleges Paragraphs 1-23 as if fully set forth herein.

32. Under Section 24.005(a)(2), a "transfer made . . . is fraudulent as to a creditor . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor (A) [w]as engaged or was about to engage in a business or a transaction for which the remaining the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (B) [i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond his or her ability to pay as they became due." Tex. Bus. & Com. Code Ann. §24.005(a)(2).

33. Walgreens is a creditor of Debtor and was a creditor, as defined by Tex. Bus. & Com. Code Ann. §24.002(4), at the time each Transfer was made.

34. Defendants did not receive a reasonably equivalent value in exchange for the Transfers as evidenced by the fact that:

    a. The evidence suggests Defendants received nothing of value in exchange for the Transfers;

    b. The Transfers were made by Debtor to Defendants, affiliates and insiders; and

    c. Debtor retained control over the funds after they were Transferred through its affiliation with Defendants, as evidenced by the Returned Funds.

35. Debtor and Defendants made the Transfers knowing that Debtor's remaining assets were unreasonably small in relation to the debt owed to Walgreens as evidenced by Debtor and Defendants' former CEO's admission during deposition that (1) during the first quarter of 2021, when the Transfers took place, Debtor became financially unstable and unable to pay its bills in general, and (2) when Walgreens demanded a refund pursuant to the GTA, Debtor did not have the money to pay.

36. Debtor and Defendants made the Transfers as part of a larger fraudulent scheme knowing and intending that the Transfers would render Debtor unable to pay the debt to Walgreens.

37. The Transfers were made in violation of Tex. Bus. & Com. Code Ann. §24.005(a)(2).

38. As a direct and proximate result, Walgreens incurred significant damages.

## COUNT III
### Fraudulent Conveyance Pursuant to Tex. Bus. & Com. Code Ann. § 24.006(a)
### Transfers Made During Insolvency or Resulting in Insolvency

39. Walgreens re-alleges Paragraphs 1-23 as if fully set forth herein.

40. Under Section 24.006, a "transfer made . . . by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer." Tex. Bus. & Com. Code Ann. § 24.006(a).

41. A debtor is "insolvent", as defined in Section 24.003, when "the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." Tex. Bus. & Com. Code Ann. § 24.003(a).

42. Insolvency is presumed if a debtor is "generally not paying his or her debts as they become due." Tex. Bus. & Com. Code Ann. § 24.003(b).

43. Walgreens is a creditor of Debtor and was a creditor with a claim, as defined by Tex. Bus. & Com. Code Ann. § 24.002(3), before the time each Transfer was made.

44. Defendants did not receive a reasonably equivalent value in exchange for the Transfers as evidenced by the fact that:

   a. The evidence suggests that Defendants received nothing of value in exchange for the Transfers;

   b. The Transfers were made by Debtor to Defendants, affiliates and insiders; and

   c. Debtor retained control over the funds after they were Transferred through its affiliation with Defendants, as evidenced by the Returned Funds.

45. Debtor was insolvent, as defined by Tex. Bus. & Com. Code Ann. § 24.003, at the time the Transfers were made, as evidenced by Debtor and Defendants' former CEO's admission during deposition that (1) during the first quarter of 2021, when the Transfers took place, Debtor became financially unstable and unable to pay its bills in general as they became due, and (2) when Walgreens demanded a refund pursuant to the GTA, Debtor did not have the money to pay.

46. Defendants knew Debtor was insolvent, as the same members of the board ultimately controlled both Defendants and Debtor.

47. The Transfers violated Tex. Bus. & Com. Code Ann. § 24.006(a).

48. As a direct and proximate result, Walgreens incurred damages in the amount of $9,893,671.20.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Walgreens respectfully requests the Court to:

a.	Award Walgreens equitable relief, including, but not limited to, avoiding the Transfers in favor of Walgreens;

b.	Award Walgreens judgment for the value of the assets transferred;

c.	Issue an injunction against Defendants preventing further disposition of the transferred property;

d.	Award Walgreens punitive damages for Debtor and Defendants intentional, fraudulent misconduct;

e.	Award Walgreens attorneys' fees, interest, and costs of suit; and

f.	Award Walgreens such other and further relief as the Court may deem just and equitable pursuant to Tex. Bus. & Com. Code Ann. § 24.008(a)(3)(C).

Respectfully submitted,

/s/ *Dawn Estes*
Dawn Estes
State Bar No. 14251350
Linda G. Moore
State Bar No. 14359500
ESTES THORNE EWING & PAYNE PLLC
3811 Turtle Creek Blvd., Suite 2000
Dallas, Texas  75219
Telephone:  (214) 599-4000
Telecopier: (214) 599-4099
destes@estesthorne.com
lmoore@estesthorne.com

—and—

WARGO FRENCH & SINGER LLP

David M. Pernini (*Pro Hac Vice* To Be Filed)
999 Peachtree Street, NE, Suite 1120
Atlanta, Georgia 30309
(404) 853-1500


ATTORNEYS FOR PLAINTIFF WALGREEN CO.